UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| THE ROMAN CATHOLIC CHURCH | * | BANKR. CASE NO. 20-10846 |
| OF THE ARCHDIOCESE OF NEW | * | |
| ORLEANS | * | |

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF | * | CASE NO. 22-cv-1996 |
| UNSECURED CREDITORS OF | * | |
| THE ROMAN CATHOLIC CHURCH | * | JUDGE GUIDRY |
| OF THE ARCHDIOCESE OF NEW | * | |
| ORLEANS | * | MAG. JUDGE DOUGLAS |
| | * | |
|     Appellant | * | Relates to Docket # 1 |
| | * | |
| v. | * | |
| | * | |
| THE ROMAN CATHOLIC CHURCH | * | |
| OF THE ARCHDIOCESE OF NEW | * | |
| ORLEANS | * | |
| | * | |
|     Appellee | * | |

**OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED COMMERCIAL CREDITORS OF THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS TO THE MOTION FOR LEAVE TO APPEAL [P-1] FILED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS**

**MAY IT PLEASE THE COURT**, the Official Committee of Unsecured Commercial Creditors of the Roman Catholic Church of the Archdiocese of New Orleans (the "Commercial Committee") respectfully opposes the *Motion for Leave to Appeal* ("Motion for Leave") [District Court, P-1]¹ made by the Official Committee of Unsecured Creditors of the Roman Catholic

---

¹ To the extent it can, the Commercial Committee will cite to documents in the District Court record, 22-cv-1996. Given the state of the proceedings (*i.e.*, a motion for leave to appeal), certain documents referred to herein have not been lodged as the record on appeal. The Commercial Committee will endeavor to cite to the appropriate docket record of the underlying case as necessary.

Page | 1

Church of the Archdiocese of New Orleans (the "Committee") for the following reasons: (1) Committee does not have standing to appeal an order removing certain members from continued service on the Committee, and; (2) the Committee (a) mischaracterizes the basis of the Bankruptcy Court's Enforcement Order and the power to enforce its prior orders, and (b) fails to satisfy the exceptional circumstances standard for granting leave to appeal.

## Background

The Roman Catholic Church of the Archdiocese of New Orleans (the "Debtor") filed a chapter 11 bankruptcy petition on May 1, 2020, docketed as case number 20-10846 (the "Bankruptcy Case").  Due to numerous issues relating to the discovery, sharing, and dissemination of confidential information by and among the Debtor, the Committee, its members, and professionals, as well as information shared by and with entities affiliated with the Debtor, the United States Bankruptcy Court for the Eastern District of Louisiana ("Bankruptcy Court") entered a Protective Order (the "Protective Order").  *See*, Bankruptcy Case, P-305.  The Bankruptcy Court amended and modified the Protective Order several times. *See*, Bankruptcy Case, P-729, P-885, P-1120.  The Protective Order generally requires that non-public confidential information obtained by the parties within the Bankruptcy Case not be shared by recipients except as expressly authorized by the Protective Order.

On January 20, 2022, the Debtor filed a *Motion for Entry of Order: (A) Compelling the Tort Committee and/or its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order* (the "Protective Order Motion").  *See*, Bankruptcy Case, P-1256.  The Protective Order Motion was submitted under seal and remains under seal.  *See*, Bankruptcy Case, P-1255 (order granting motion to seal).  As is apparent from the title itself, the Debtor alleged a violation of the Protective Order.  The Bankruptcy Court

entered an Order on April 25, 2022 directing the Office of the United States Trustee ("OUST") to investigate the allegations contained in the Debtor's Protective Order Motion and file a report of its investigation no later than June 3, 2022.  *See*, Bankruptcy Case, P-1468.

On June 3, 2022, the OUST filed its report under seal as directed by the Bankruptcy Court's April 25, 2022 order.  *See*, Bankruptcy Case, P-1572.  The Bankruptcy Court, in response to the OUST's report, entered the Order made the subject of the instant motion for leave to appeal (the "Enforcement Order").  *See*, District Court, P-1, Exhibit "A," pp. 8-12; *see also*, Bankruptcy Case, P-1574.  The Enforcement Order recited some of the results and implications of the OUST's investigation; namely, that Richard Trahant, Esq. ("Trahant") received confidential information subject to the Protective Order and knowingly and willfully breached the Protective Order by sharing information with third-parties.  Enforcement Order, p. 3; District Court, P-1, Exhibit "A," p. 10.  Trahant, in turn, is the personal, state-court counsel to four individuals who were serving on the Committee prior to entry of the Enforcement Order.  *Id*.  Given the nature of the attorney-client relationship and necessity to share information between client and attorney, the Bankruptcy Court, clearly appalled by the extent and apparent willfulness of the Protective Order breach and worried about the sanctity of further information which would be shared with Committee members and their counsel, ordered the OUST to remove those four members from continuing participation in the case as Committee members and authorized the OUST to appoint new members to the Committee.  *Id*. at p. 5.  This action, removal of Committee members, forms the underlying basis for the Committee's attempt to appeal the Enforcement Order.

On June 10, 2022, the four ex-members of the Committee filed a document (the "Members Appeal Notice") entitled "*Emergency Notice of Appeal on behalf of Abuse Claimants and Ex-Committee Members of the Unsecured Creditor's* [sic] *Committee*" seeking to appeal both the

Enforcement Order and the OUST's Notice of Appointment of Reconstituted Official Committee of Unsecured Creditors (the "<u>Committee Appointment Notice</u>").  *See*, Bankruptcy Court, P-1580.  The Members Appeal Notice did not include a contemporaneous motion for leave as required by Bankruptcy Rule 8004(a)(2).  The same day, Trahant filed a Notice of Appeal (the "<u>Trahant Appeal Notice</u>") seeking to appeal the Court's Enforcement Order.  *See*, Bankruptcy Court, P-1582.  The Trahant Appeal Notice, as well, did not include a motion for leave.  Nevertheless, the Committee filed its Notice of Appeal on June 24, 2022, ostensibly pursuant to Bankruptcy Rule 8002(a)(3), and contemporaneously therewith filed the Motion for Leave.  *See*, District Court, P-1.

The Motion for Leave attempts to set forth three bases for appeal, which can be distilled to: does 11 U.S.C. § 1102(a)(4) govern all circumstances in which a court directs addition or removal of committee members?  The simple answer to this question, as shown below, is no – 11 U.S.C. § 1102(a)(4) is not the exclusive mechanism by which committee membership can be rearranged.  And notwithstanding the Committee's attempt at issue-formulation, the real issue presented in the Motion for Leave is the Bankruptcy Court's enforcement of its prior order, *i.e.*, the Protective Order.[2]

---

[2] The Commercial Committee wishes to note that it has no intention of interjecting itself into the appeals, to the extent this Court grants leave, of the ex-members or Trahant.  Nor does the Commercial Committee intend to participate as an appellee in the Committee's appeal, if leave is granted.  Issues involving the particular make-up of its sister Committee are not particularly germane to the mission of the Commercial Committee.  But, neither should the make-up of the Committee be of particular import to the Committee itself.  The Committee, as a statutorily empowered party-in-interest within the bankruptcy case (11 U.S.C. § 1102, 1103), is still constituted and can still function with regard to the core issues relating to bankruptcy reorganization regardless of who sits upon it.  The Commercial Committee, however, is concerned with whether the Committee should consume estate resources otherwise available to satisfy claims, or otherwise direct its focus away from the Debtor's reorganization efforts, to pursue a membership question which, at the end of the day, does not seem to inhibit its operation.  For this reason, and to offer what it believes to be a clarification of the issues on appeal, the Commercial Committee has determined to file the this opposition to the Motion for Leave.

**The Committee Lacks Standing to Appeal**

Simply because one appears in court as a party in interest does not confer appellate standing. *See*, *Rohm & Haas Tex., Inc. v. Ortiz Bros. Insulation, Inc*., 32 F.3d 205, 208 (5th Cir. 1994). And within the Fifth Circuit, a potential appellant of a bankruptcy court ruling must satisfy the "person aggrieved" standard. *See*, *In re Coho Energy, Inc*., 395 F.3d 198, 202 (5th Cir. 2004); *In re Cajun Elec. Power Co-op., Inc*., 69 F.3d 746, 749 (5th Cir. 1995), withdrawn in part, 74 F.3d 599 (5th Cir. 1995). To be a "person aggrieved," "a party must show that it was 'directly and adversely affected pecuniarily by' the order, or that the order diminished its property, increased its burdens or impaired its rights." *Cajun Elec*., 69 F.3d at 749. "The rule is designed to streamline bankruptcy proceedings by denying appellate standing to the typically large number of parties whose interests are only indirectly affected by bankruptcy court orders." *See*, *In re Victory Markets*, 195 B.R. 9, 18 (N.D.N.Y. 1996) citing *Kane v. Johns Manville Corp*., 843 F.2d 636, 642 (2nd Cir. 1988); *see also In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987).

The Commercial Committee notes that the Enforcement Order, which the Committee seeks to appeal, in no way directly impacted a pecuniary interest of the Committee or its constituents. The Enforcement Order simply directed the removal of certain members of the Committee and authorized the OUST to appoint new members as the OUST saw fit.[3] Nothing about the Enforcement Order impaired the existence or function of the Committee. In fact, the Enforcement Order specifically provided that the Committee could "continue to function with its two remaining members." *See*, District Court, P-1, Exhibit A, p. 12. In sum, post-Enforcement Order, the Committee continues to exist, continues to act and continues to be welcome to participate in the Bankruptcy Case to protect the interests of its constituency.

---

[3] And, in fact, on June 21, 2022 the OUST did appoint three additional members to the Committee, resulting in the Committee now being comprised of five members. Docket 1618.

Moreover, it cannot be said that the Bankruptcy Court's Enforcement Order diminished the Committee's property, the property of its constituency or property of the Debtor's bankruptcy estate. The Enforcement Order made no ruling regarding estate property, rights of the estate, rights of the Committee or otherwise impacted the estate in any way such that a "pecuniary interest" of the Committee's constituency could be said to be affected.

Finally, the Enforcement Order did not directly increase the Committee's burdens or impair its rights. Nothing in the Enforcement Order limits the participation of the Committee in the ongoing reorganization process, and nothing in the Enforcement Order impairs the Committee's ability to analyze issues, appear with regard to such issues, and assert its constituents' interests as they relate to such issues. In sum, it appears that the Enforcement Order had no effect on the Committee itself, separate and apart from the effect it had on the interests of certain individual former members of the Committee. Indeed, the very act of filing the Motion for Leave indicates that the Committee, as a representative body, continues to exist and continues to function. By filing the Motion for Leave, the Committee obviously met and consulted with its professionals, voted, and directed its professionals to conduct actions on its behalf. While the Enforcement Order may have changed the composition of the Committee, it did not impair any rights of the Committee to participate in the bankruptcy process and continue its functions within the Bankruptcy Case.

Probably the only factor which could conceivably augur in favor of Committee standing would be that the removal and replacement of members burdened the Committee as new members would be required to digest information relating to the status. But this would be the case in any event were the OUST to appoint a new member, whether because of representational issues under 11 U.S.C. § 1102(a)(4) or because of the death or withdrawal of an existing member. It is undisputed that of the six members who served on the Committee as of the date of entry of the

Enforcement Order, two members still serve. Institutional memory of the case-to-date has not been lost. Nevertheless, any "burden" placed upon the Committee by the removal of certain members and addition of new members is the same "burden" which would exist if new members were appointed outside of the context present in this case.

Moreover, the Commercial Committee believes that the proper lens through which to view the "increased its burdens" language is that an order required the proposed appellant to undertake a new action or scale a new hurdle outside the context of its internal meeting preparation and agenda. *See*, 11 U.S.C. § 1103(c) (committee may consult concerning administration of the case, investigate the acts and financial condition of the debtor, participate in the formulation of a plan and advise its constituency of matters regarding same, request the appointment of a trustee, and perform such other services as are in the interest of those represented). The Enforcement Order interfered with none of these powers and duties. Any further "burdens" placed upon the Committee would be speculative, at best. *See*, *In re Betteroads Asphalt, LLC* 2020 U.S.Dist. LEXIS 226406 (D.P.R.), *Advantage Healthplan, inc. v. Potter*, 391 B.R. 521 (D.D.C. 2008) (speculative harms insufficient to satisfy "person aggrieved" standard). In this case, the Enforcement Order did not require the Committee to do anything with regard to the case or increase its burdens under § 1103(c).

Finally, the Commercial Committee points out that a bankruptcy committee exists to participate in a debtor's reorganization and protect the interests of its constituency as a whole with regard to that reorganization. *See, e.g.*, *In re Barney's, Inc.*, 197 B.R. 431, 442 (Bankr. S.D.N.Y. 1996) (noting that committees and their members have a fiduciary duty to all creditors represented by the committee). A committee, however, does not represent the individual interests of each member of its constituency such that it functions as a court-sanctioned spokesperson, at the cost

and expense to the estate as a whole, for the interests of its individual members. *See*, *In re Shaffer-Gordon Assocs., Inc.*, 40 B.R. 956, 958 (Bankr. E.D.Pa. 1984); *In re Grant Broadcasting of Philadelphia, Inc.* 71 B.R. 655 (Bankr. E.D.Pa. 1987). Here, the Committee requests leave to appeal an order of the Bankruptcy Court which enforced its Protective Order through the removal of certain members of the Committee. In effect, the Committee seeks to act as champion for the rights of certain former members alone – not for the general rights of its constituency. In these circumstances, reversal of the Court's Enforcement Order and reinstitution of the individual members to the Committee does not appear to have any connection with the Committee's duties and role in the reorganization process. Instead, the sole aim of this appeal is to have persons who once-were, but now-are not, Committee members reinstated as Committee members. As such, it appears that the Committee's request to appeal solely advances the personal rights of its former members (if committee membership can be construed to be a "right").[4] The Commercial Committee does not believe this tangential nexus conveys standing sufficient to prosecute an appeal of the Enforcement Order.[5]

### The Committee Fails to Present "Exceptional Circumstances" Necessary to Appeal an Interlocutory Order

The Committee admits that the Enforcement Order is a non-final interlocutory Order. *See*, District Court, P-1, p.6 and cases cited therein. As such, leave must be granted by this Court authorizing an appeal of such non-final order. *See*, 28 U.S.C. § 158, *see also* F.R.B.P. 8004(a)(2). While the decision to grant or deny leave to appeal a bankruptcy court's interlocutory order is

---

[4] Notwithstanding its view that the Committee lacks standing to appeal here, the Commercial Committee can empathize with the loss of members whose efforts, views and counsel were likely appreciated by the other, remaining members of the Committee. Nonetheless, from a legal perspective, the Commercial Committee has difficulty agreeing that departure of certain members implicates a particularized concern, burden or interest of the Committee as a whole and as an ongoing entity.

[5] *C.f.*, *Victory Mkts.*, *supra* (entity denied appointment to committee lacked standing to appeal order denying appointment).

committed to the district court's discretion, interlocutory appeals are nonetheless disfavored.  *See*, *In re O'Connor*, 258 F.3d 392, 399-400 (5th Cir. 2001), *see also In re Hunt Intern. Res. Corp.*, 57 B.R. 371 (N.D.Tex. 1985).  As such, courts have repeatedly stressed that leave to appeal interlocutory bankruptcy orders should be limited to cases presenting <u>exceptional circumstances</u> where allowing such an appeal would avoid protracted and expensive litigation.  *See*, *In re Turner*, 1996 WL 162110 at *1 (E.D.La. 1996); *In re Central Louisiana Grain Co-op., Inc*., 489 B.R. 403, 408 (W.D.La. 2013); *Sims v. Sunnyside Land, LLC*, 425 B.R. 284, 290 (W.D.La. 2010); *see also*, *Clark-Dietz & Assoc. v. Basic Construction*, 702 F.2d 67, 69 (5th Cir.1983).

While the Fifth Circuit has not expressly established a hard and fast rule for determining whether to grant leave to appeal an interlocutory order of a bankruptcy court, most district courts have relied upon the standard set forth in 28 U.S.C. § 1292(b).  *See*, *Crescent Bank & Trust v Cadle Co. II*, 2022 U.S.Dist. LEXIS 33267 (W.D.La. 2022); *Cent. La. Grain*, *supra*.  As noted by the Fifth Circuit in *In re Ichinose*, 946 F.2d 1169, 1177 (5th Cir. 1991), the § 1292(b) standard requires a showing that the appeal involves (i) a controlling issue of law, (ii) where a substantial ground for difference of opinion exists, and (iii) that an immediate appeal will materially advance the ultimate termination of the litigation.  *See also*, *Crescent Bank*, *supra* at *6.

### a. Review of the Enforcement Order does not Implicate a Pure Question of Law

With regard to the first factor – a controlling issue of law – courts have interpreted that requirement to mean that the appeal involves only a question of law.  For example, courts have noted, "the question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record."  *Speer v. Tow* (*In re Royce Homes LP*), 466 B.R. 81, 94 (S.D.Tex. 2012), quoting *In re Fairfiled Sentry Ltd. Litig*., 458 B.R. 665, 673 (S.D.N.Y. 2011).

According to the Committee, 11 U.S.C. § 1102(a)(4) dictates the only circumstances and procedure by which a bankruptcy court may intervene in the composition of a committee. *See*, District Court, P-1, pp. 7-13. The Committee therefore argues that, since the Bankruptcy Court neither held a hearing nor examined certain factors relating to committee composition, the Bankruptcy Court committed legal error.

The real issue, however, is not what the Committee posits. The Committee seeks to appeal a non-final order enforcing the Protective Order. If one backs up from the argument asserted by the Committee and reviews the circumstances leading to the entry of the Enforcement Order, it is clear that the Enforcement Order does not derive from a desire by the Bankruptcy Court to wade into the issue of whether or not the Committee, as it was constituted on June 7, 2022, adequately represented the interests of creditors. Instead, a long chain of events precipitated entry of the Enforcement Order, beginning with the Debtor's assertions in the Protective Order Motion that the Protective Order had been breached. *See*, Bankruptcy Case, P-1256. Subsequently, the Bankruptcy Court directed the OUST to investigate the allegations of breach and file a report outlining the results of its investigation. The OUST diligently investigated and filed its report. The Enforcement Order ensued nearly immediately after the Court's review of the OUST's report outlining the results of its investigations relating to the Protective Order breaches. The events leading to entry of the Enforcement Order, along with the contents of the Enforcement Order itself, make clear that the Bankruptcy Court was concerned with responding to a breach of a prior order of the Bankruptcy Court by a party or parties in interest before it.

A Bankruptcy Court, like any other court, has authority to enforce its orders. *See*, *e.g.*, *Aloe Vera of America, Inc. v United States*, 376 F.3d 960, 964-965 (9th Cir. 2004) ("All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms

effectively to ensure obedience to their orders. . ."). In this case, the Bankruptcy Court, after reviewing the Debtor's allegations and the results of the OUST's investigation, became quite concerned about the breaches of the Protective Order. Given that information subject to the Protective Order is continuing to be shared with the Committee, its members and others subject to the Protective Order, it can be surmised that the Bankruptcy Court not only was concerned about prior breaches, but also the possibility of further breaches of the Protective Order.

From the findings included in the Enforcement Order, it appears that Trahant was at least one source of the breaches identified by the Debtor in its Protective Order Motion. *See*, District Court, P-1, Exhibit "A," p. 10. And further, the Enforcement Order notes that Trahant represents the ex-members of the Committee as personal counsel and is privy to information which could have been shared with the ex-members as a result of their service on the Committee. The Bankruptcy Court, then, was confronted with the following issue – to prevent further breaches of the Protective Order relating to confidential information being shared with the Committee and its members, what action should be taken? *See*, *Id*. at pp. 10-11 (Bankruptcy Court unable to conclusively determine extent of breaches and whether others breached Protective Order).

As the Bankruptcy Court notes, the ex-members have a right to counsel of their choice. And further, have a right to share information with their counsel to foster the attorney-client relationship between them. Prohibiting the ex-members from further sharing of information with their chosen counsel would improperly interfere in the attorney-client relationship. So too would an Order prohibiting the ex-members, if they were to continue to serve on the Committee, from being privy to confidential information. The Committee likely could not function if only two of its members were allowed to review and analyze the confidential information shared by others, but four were excluded. Instead, the Bankruptcy Court sought to minimize the effect on the Committee

by simply requiring removal of the four members who were represented by Trahant – thus, allowing such members to preserve their chosen attorney-client relationship with their preferred attorney, while specifically maintaining the Committee as an on-going party-in-interest.[6]

The Committee's reference to notice and hearing procedures as well as standards for review of committee composition under 11 U.S.C. § 1102(a)(4) are misplaced. Here, grounds for removal are not premised whatsoever upon the notion of whether the ex-members provided "adequate representation" of the Committee constituency. The reason for removal was to enforce the sanctity of the Protective Order with as little disruption to the reorganization efforts as possible. Service upon a committee does not insulate one from the power of the Bankruptcy Court to enforce a protective order, or any other order. Service upon a committee does not require that any and all decisions regarding proper steps available to enforce compliance and remedy breaches of an order are corralled into an "adequate representation" analysis, nor that notice and hearing must be given.

Moreover, 11 U.S.C. § 105(a) specifically overrides any requirements of § 1102(a)(4). Section 105(a) provides, in part, "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." The Bankruptcy Court specifically relied on the powers under § 105(a) to issue, *sua sponte*, a committee-membership removal order so as to implement and enforce the Bankruptcy Court's Protective Order, as well as to prophylactically prevent any further possible abuse of process. The actions of the Bankruptcy Court fall squarely within the authority expressly allowed by § 105(a).

---

[6] It should be noted, this removal action did not impair any right or property interest of any of the former members. The Bankruptcy Code does not grant any specific entity a right to be appointed to a committee, nor does service upon the committee provide compensation.

What the Committee is attempting to appeal is not a simple issue of whether proper statutory notice was given. The Committee cites to *In re Dow Corning Corp.*, 212 B.R. 258 (E.D.Mich. 1997) as authority for the proposition that notice and a hearing must be requested by a party in interest (which cannot be the bankruptcy court acting *sua sponte*) before committee members may be removed. Whether *Dow Corning* is a correct statement of the law is somewhat debatable as the underlying issue in the *Dow Corning* case was eligibility, not adequacy of representation. Nevertheless, what was not at issue in *Dow Corning* was removal under the circumstances here, and the *Dow Corning* court did not discuss the overriding applicability of the express power of a court to make any order, even *sua sponte*, to enforce prior orders under 11 U.S.C. § 105(a). To hold that notice and a hearing (as well as the "adequate representation" analysis) overrides the ability of a court to enforce its own orders ignores the introductory language of the sentence quoted above, "no provision of this title [including §1102(a)(4)] providing for the raising of an issue by a party in interest shall be construed to preclude the court . . ." from acting *sua sponte*. *Id.* 11 U.S.C. § 1102(a) deals with routine requests to reconstitute a committee. In contrast, 11 U.S.C. § 105(a) deals precisely with specific enforcement actions by the Bankruptcy Court. In this case, § 1102(a)(4) must give way to the power of a court to enforce its prior orders *sua sponte* to prevent abuse of process.[7]

In this light, then, the question, as it relates to the instant Motion for Leave, becomes whether or not the Enforcement Order issued pursuant to § 105(a) constitutes a "pure question of law." It does not. The Bankruptcy Court's Enforcement Order was issued based upon a factual

---

[7] The Commercial Committee notes that the Bankruptcy Court cited both § 105(a) and § 1102(a)(4) as bases for its Enforcement Order. The Commercial Committee points out the Bankruptcy Court did two things, removed members pursuant to its powers under § 105(a) and directed the OUST to appoint new members pursuant to § 1102(a)(4) if it believed the remaining members would not adequately represent the Committee's constituency. The use of § 1102(a)(4), in the context of the Enforcement Order, is limited to this second authorization, not the removal.

investigation conducted by the OUST.  As noted in the Enforcement Order, the OUST's investigation contained 78 sworn declarations, 18 transcripts of examinations conducted pursuant to Rule 2004, Federal Rules of Bankruptcy Procedure, a transcript and two summaries of telephone interviews, as well as numerous other documentary evidence.  In all, the Bankruptcy Court reviewed a wealth of factual information in making a determination that a breach of the Protective Order had occurred and that the action of removal of the ex-members was necessary.

Orders issued pursuant to 11 U.S.C. § 105(a) are reviewed for abuse of discretion.  *See*, *Carroll v. Abide* (*In re Carroll*), 850 F.3d 811, 814 (5th Cir. 2017).  An "abuse of discretion" standard necessarily involves a review of the facts that form the basis of the Bankruptcy Court's determination for clear error.  *Id*. at 815, citing *FDIC v. Maxxam, Inc*., 523 F.3d 566, 576-577 (5th Cir. 2008).  Thus, to review the propriety of the Bankruptcy Court's Enforcement Order would require this Court to thoroughly study the record.  Far from being a pure question of law, review of the Enforcement Order appears to involve substantial factual review.  At best, review presents a mixed question of law and fact, but certainly not a "quick and clean" legal issue.  As such, the Motion for Leave fails to establish the first factor of the § 1292(b) test.  The absence of this factor alone counsels denial of the Motion for Leave.  *See*, *Crescent Bank*, 2022 U.S.Dist. LEXIS 33267 at *6 ("all three grounds in § 1292(b) must exist in order for the Court to consider and grant an interlocutory appeal").

    **b. The Motion for Leave fails to Establish that a Substantial Ground for Difference of Opinion Exists**

As pointed out, the Commercial Committee believes the Committee's Motion for Leave focuses on the wrong issue.  The actual issue is whether the Bankruptcy Court was authorized under § 105(a) to enforce its Protective Order, and if so, did the Bankruptcy Court abuse its discretion.  The Committee did not address the proper issue, and as courts have held, it is

incumbent upon the moving party to establish the existence of each factor under § 1292(b). *Crescent Bank* at *6-7.

Nevertheless, even had the Committee framed the issue correctly, it cannot satisfy this element. The question in this case is not whether the Bankruptcy Court applied the correct legal standard under § 1102(a)(4) (and the Commercial Committee disputes that the "factors" cited as being used by courts are the sole determinative standard for application of that section). Instead, the question is whether in applying the powers imbued under § 105(a) the Bankruptcy Court abused discretion granted by statute. That power, simply put, is not subject to an easy legal distillation of a standard for its application. The inquiry is intensely factual in nature, each use dependent upon the unique facts at play causing the invocation of the § 105(a) power. The Commercial Committee does not believe that review at this stage would disclose that the Bankruptcy Court applied an incorrect legal standard in its determination to enter the Enforcement Order, such that it can be said that a substantial ground for disagreement exists. As with the first factor, the second § 1292(b) factor is similarly lacking.

### c. Granting Leave to Appeal will not Materially Advance a Termination of Litigation

The final § 1292(b) factor requires an inquiry into whether determination of a non-final issue at this stage will materially advance the litigation toward a terminal point. Consider the following: if the Court ultimately allows appeal and reverses the Bankruptcy Court, and, in accordance with the request of the Committee, orders reinstatement of the ex-members, will the issue be over and done?

The answer is no. The Bankruptcy Court could hold a hearing and determine at the end of the hearing that a record has then been established which supported her use of § 105(a) to remove the Committee members. New facts could be established providing even stronger support for

removal. The matter would then undoubtedly be the subject of yet another motion seeking leave to appeal. Moreover, service on a committee is, as the Committee points out, always subject to review under 11 U.S.C. § 1102(a)(4) for "adequate representation." Any party in interest can request a hearing on the subject of removal, and the Commercial Committee can easily foresee the OUST immediately moving for removal of the ex-members pursuant to the rubric of § 1102(a) if this Court were to order reinstatement. The point is that committee membership is not absolute and reinstatement would not terminate anything. The situation presented by the instant Motion for Leave will not culminate in any finality or termination of any question. The third § 1292(b) factor is distinctly lacking.

### d. The Bankruptcy Court did not Err through "Imputing" Conduct of One Party to Another

As a final argument, the Committee asserts that the Bankruptcy Court erred in imputing the conduct of Trahant to his clients, the ex-members. In concluding the removal was warranted, the Bankruptcy Court stated, "[g]iven Trahant's willful breach and disregard of this Court's Protective Order and the dynamics present on the Committee, the Court is forced to impute Trahant's actions to those of his clients on the Committee and finds cause for their removal from the Committee." *See*, District Court, P-1, Exhibit "A," pp. 11-12. While the Commercial Committee shares the concern expressed by the Committee that ordinarily the actions of agents are not necessarily attributable to principals, the Commercial Committee believes that the actual action of the Court was not necessarily an imputation of bad conduct.

The Bankruptcy Court was clear that it found Trahant had breached the Protective Order. However, as noted above, the issue compelling immediate *sua sponte* action by the Bankruptcy Court was not necessarily prior breaches. The Bankruptcy Court noted that the OUST's investigation was not conclusive that all breaches had been discovered and other actors could have

breached the Protective Order as well. Moreover, the guiding impulse by the Bankruptcy Court seems to have been a desire to protect the ongoing confidentiality of information. The Bankruptcy Court noted that it did not want to intrude upon the attorney-client relationship, which itself necessarily includes the full and frank sharing of information by the client and the attorney between each other. Given that Trahant, in the eyes of the Bankruptcy Court, had breached the Protective Order, any order to either limit sharing of information between him and his clients would impermissibly intrude upon the attorney-client relationship. As well, any action to limit sharing of confidential information only to certain members of the Committee, but not others, would likely pose a substantial barrier to effective operation of the Committee.

In light of the alternatives, simply removing the Trahant-client members from the Committee, thus preventing them and their counsel from obtaining further confidential information shared with the Committee, and from continuing to have access to the confidential information previously shared with the Committee, appears to be the least burdensome, narrowly tailored option the Bankruptcy Court had to protect the sanctity of the ongoing exchange of confidential information. While the Bankruptcy Court did use the term "impute," the Commercial Committee believes its use is better understood in the context of imputing that an ongoing availability to Trahant's clients of confidential information subject to the Protective Order would possibly jeopardize the privacy and confidentiality of the information due to the possibility, and perhaps necessity, that Trahant's clients would or might share such information with Trahant (against whom the Bankruptcy Court issued a separate order not made the subject of the Motion for Leave).

## Conclusion

For the reasons stated, the Committee lacks standing to pursue an appeal of the Enforcement Order. And furthermore, the Committee has misapprehended the real issue at play – the Bankruptcy Court's powers to enforce its own orders pursuant to 11 U.S.C. § 105(a). In doing so, the Committee has failed to establish the presence of all three of the 28 U.S.C. § 1292(b) factors required to grant leave to pursue an interlocutory appeal. For all of the reasons cited herein, the Commercial Committee respectfully requests that the Court deny the Motion for Leave.

Respectfully Submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**

By:  */s/Brandon A. Brown*
**Paul D. Stewart, Jr. (LA. Bar # 24661)**
dstewart@stewartrobbins.com
**William S. Robbins (LA. Bar # 24627)**
wrobbins@stewartrobbins.com
**Brandon A. Brown (La. Bar #25592)**
bbrown@stewartrobbins.com
**Brooke W. Altazan (La. Bar #32796)**
baltazan@stewartrobbins.com
301 Main St., Suite 1640
Baton Rouge, LA 70801-0016
Telephone: (225) 231-9998
Facsimile: (225) 709-9467

*Counsel to the Official Committee of Unsecured Commercial Creditors of The Roman Catholic Church of the Archdiocese of New Orleans*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 8th day of July, 2022, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which provides notice of filing to all counsel of record by electronic means.

*/s/Paul D. Stewart, Jr.*
Paul D. Stewart, Jr. (LA. Bar # 24661)